**EXHIBIT A**

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE SHELBY CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF SHELBY | ) | CAUSE NO. |

73C01-2409-PL-000028

FORZA 4809 N PALAFOX ST LLC, )
                                              )
    Plaintiff,                       )
                                              )
  v.                                       )
                                              )
AXIS SURPLUS INSURANCE    )
COMPANY                           )
                                              )
    Defendant.             )

**PLAINTIFF'S PETITION FOR APPOINTMENT OF UMPIRE**

Comes now Plaintiff, Forza 4809 N Palafox St. LLC, ("Forza"), by undersigned counsel, and for its Petition To Appoint Umpire says:

    1.    On or about June 16, 2023, the Plaintiff sustained wind damage to its commercial property covered by a policy of insurance underwritten by Defendant under policy number ESC111660, with effective dates of: October 5, 2022 to October 5, 2023. (Ex. 1).

    2.    During the course of the claim there was a dispute over the reported wind damage.

    3.    Forza retained a professional engineer who opined that the roof sustained wind damage on June 16, 2023. (Ex. 6).

    4.    Axis maintained that it disagreed with Forza and its engineer.

5.      On January 25, 2024, Plaintiff nominated Mark Ricketts as its insurance appraiser. (Ex. 7, p. 2).

6.      As it pertains to an insurance appraisal, the policy provides as follows:

Appraisal

If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. if they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

A. Pay its chosen appraiser; and
B. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

(Ex. 1, p. 32).

7.      Defendant refused to nominate an appraiser.

8.      Pursuant to the above clause, the policy specifically provides that Defendant will permit an umpire appointment by any court in this State; therefore, venue is proper in this court because it is a state court of general jurisdiction.

9.      This Court has jurisdiction. Forza is domiciled in this State. The insurance contract was formed, paid, and delivered within this State through an insurance agency in Shelbyville, Indiana. (*See* Exhibits, 3, 4, 5).

10.     Indiana law applies to the insurance policy. The general rule is that the state in which application is made, the premium paid, and policy delivered is

2

the place where the contract is entered into. *Travelers Ins. Co. v Eviston*, 37 NE2d 310, 313 (Ind. App. 1941); and *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810 (Ind.2010)(applying Maryland law to an insurance policy for issued in Maryland for a property in Indiana).

11. As such, an umpire appointment by this Court is necessary under the appraisal clause in the contract.

12. The appraisal process is a speedy method to resolve claims.

13. Further, the appraisal process allows the parties to separate covered and excluded damage. *See e.g. Carroll v. Statesman* wherein the Indiana Supreme Court upheld an award where the appraisal panel determined the scope of the damage caused by the fire. *Carroll*, 509 N.E.2d 825 (Ind. 1987), *affirming in part, Carroll v. Statesman*, 493 N.E.2d 1289, 1294 (Ind. App. 1986); *Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824 (7th Cir. 2019)(applying Indiana law), supporting an award where the appraisal panel determined the scope of the hail damage to numerous condominium buildings; and *Philadelphia Indem. v. We Pebble Point,* 44 F. Supp 3d 813, 817 (S.D. Ind. 2014)(sending the parties to appraisal and allowing the appraisal panel to separate covered storm damage from excluded wear and tear).

14. The Court in *We Pebble Point* described the appraisal process in a storm loss as follows:

> We agree with [the insured] that it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between "storm damage"

3

> and "non-storm damage." To hold otherwise would be to say that an appraisal is never in order unless there is only one conceivable cause of damage—for example, to insist that "appraisals can never assess hail damage unless a roof is brand new." . . . At least where the contract does not explicitly state otherwise, we conclude that the mere presence of causation or "coverage" disputes—in addition to the calculation of loss amounts that are at the core of an appraiser's competency—does not negate [the insured's] contractual right to an appraisal.

*Phila. Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 818 (S.D. Ind. 2014) (citing Shifrin, 991 F. Supp. 2d 1022) (other citations omitted). Many other cases have also permitted the appraisal panel to determine causation, *i.e.* what parts of this building were damaged by a covered peril, also referred to as the "scope" of the damage. *See e.g. Mesco v. Motorist Mutual,* Southern District, 1:19-cv-04875, Hanlon, Jan. 25, 2023, p. 9-14, Exhibit 10)(holding that the appraisal panel can determine the cause of the loss as part of its determination of the amount of the loss).

15. The plain language of the appraisal clause also necessarily allows the appraisal panel to determine the cause of the loss as part of its determination on the amount/scope of the loss.

16. After reviewing several dictionary definitions of "loss" the Tenth Circuit reasoned that the word "loss" unambiguously encompassed a causation component and that the panel could decide disputes over the scope of the hail damage. *Bonbeck Parker, LLC v. The Travelers Indem. Co. of Am.* 14 F.4th 1169, 1177-78(10th Cir. 2021) (holding "these definitions all include a causation component, each making clear that "loss" refers to damage resulting from a covered

4

event").¹ *See Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (concluding, based on Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary, that "amount of loss" unambiguously "includes a determination of the cause of the loss" and that "dictionary definitions of 'loss' for purposes of insurance expressly contemplate an element of causation"); *N. Glenn Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 854 N.W.2d 67, 71 (Iowa Ct. App. 2014) (citing Black's Law Dictionary to support that "[c]ausation is an integral part of the definition of loss, without consideration of which the appraisers cannot perform their assigned function"); *Walnut Creek Townhome Ass'n v. Depositors Ins.* Co., 913 N.W.2d 80, 92 (Iowa 2018) (agreeing with North Glenn and holding that "appraisers may decide the factual cause of damage to property in determining the amount of loss"). Federal courts applying state law have done the same. *See CIGNA*, 110 F. Supp. 2d at 264–65 (citing Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary to hold that phrase "amount of loss" "necessarily includes a determination of the cause of loss").

The ability for the appraisal panel to determine causation as part of determining the amount of the loss was plainly evident to Selective Insurance at the time it agreed to appraisal because the Selective adjuster wrote that appraisal would determine the "amount and scope of the damages. . . [and that] the decision is

---

¹ *See e.g.* Merriam-Webster's Collegiate Dictionary 736 (11th ed. 2003) (defining "loss" as "the amount of an insured's financial detriment by . . . damage that the insurer is liable for"). *Travelers at Bonbeck Parker, LLC v. The Travelers Indem. Co. of Am.* 14 F.4th 1169, 1177 (10th Cir. 2021).

final and binding." Additionally, "amount" plainly means a quantity. Therefore, the plain meaning of "loss" and/or "amount of loss" plainly includes a scope/causation determination as it relates to the amount of loss from the subject windstorm.

17.     The appraisal process in insurance policies has been present for over 100 years and is designed to be an expeditious manner of resolving claims without discovery or court process. *See e.g. Manchester Fire Assurance Company v. Koerner*, 40 N.E. 1110 (1895)(discussing the appraisal process under similar policy language over 100 years ago); and *Shifrin v. Liberty Mutual Insurance*, 991 F. Supp. 2d 1022, 1038 (S.D. Ind. 2014)(stating that appraisal is a "favored private procedure because it serves as an inexpensive and speedy means of settling disputes.")

18.     The Southern District of Indiana has recognized on several occasions that appraisal is a proper remedy that may be invoked by either party. *See e.g. Shifrin v. Liberty Mutual Insurance*, 991 F. Supp. 2d 1022, 1041 (S.D. Ind. 2014)(holding that the insurer did not waive its right to invoke appraisal); *FDL, Inc. v. Cincinnati Ins.* 135 F.3d 503, 504 (7th Cir. 1997)(discussing completion of the appraisal process after suit was filed); and *Philadelphia Indemnity v. We Pebble Point*, 44 F. Supp. 3d 813, 815 (stating that "Indiana Courts have repeatedly affirmed the enforceability of appraisal clauses, which are a common feature of first-party insurance contracts.")

19.     The Seventh Circuit has also recognized that appraisal is a useful tool that the parties can utilize to determine the entire claim or even a sub-issue within the claim. *See Windridge of Naperville Condominium Association v. Philadelphia*

*Indemnity Insurance Company*, 932 F.3d 1035, 1037-38(7th Cir. 2019)(upholding a district court's decision to send the issue of the availability of reasonably matching siding and replacement cost to the appraisal panel to determine after a wind loss).

20. The Policy states that an appraisal award is valid if the umpire and an appraiser agree on it. (See appraisal clause, above).

21. Nothing in the policy precludes the appraisal process from going forward to determine the cause/scope of the subject loss.

22. Plaintiff also needs the insurance benefits to pay for the repairs.

23. As such, the claim needs to move forward with a court-appointed umpire.

24. The primary dispute for the umpire to resolve involves addressing the scope of loss from wind damage sustained to this building.

25. If there was no wind damage, then the appraisal panel will not award anything.

26. Mr. Ricketts, Plaintiff's appraiser, has advised that the following persons are competent in this area to serve as umpire:

> Michael Abel, insurance adjuster and field manager for Worley Catastrophe Claims for more than 20 years and has been certified for assessment of wind and hail damage through Haag Engineering. He has been involved in over 400 appraisals and arbitrations. (Ex. 8, CV).
>
> Jon Linville, Greenwood, IN, 317-517-0245, an independent property adjuster and certified insurance umpire with approximately 15 years of experience. (Ex. 9, CV).

27.Mr. Linville also has the added credential of being a certified insurance umpire. (See Ex. 9, CV).

WHEREFORE Plaintiff requests that the Court nominate either Michael Abel or Jon Linville as umpire.

Respectfully submitted,

/s/William D. Beyers
William D. Beyers, #28466-49
BUCHANAN & BRUGGENSCHMIDT, P.C.
80 E. Cedar St.
Zionsville, Indiana  46077
Telephone:  (317) 873-8396
Facsimile:  (317) 873-2276
bbeyers@bbinlaw.com

Attorneys for Plaintiff